IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KENNETH MORGAN,

       Plaintiff,

       vs.                                  CIVIL NO. 1:12-CV-00583 WPJ/LAM

KENNETH CARREJO and,
ANTHONY ROMERO

       Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO INTERVENE
## BY NEW MEXICO RISK MANAGEMENT DIVISION

       THIS MATTER comes before the Court upon a Motion to Intervene filed on March 1, 2013 by the New Mexico Risk Management Division **(Doc. 41)**.  Responses have been filed by Plaintiff and Defendant Carrejo, who remains as the sole Defendant in this action following the stipulated dismissal of Defendant Romero.  Having reviewed the parties' briefs and applicable law, I find that proposed Intervenor's motion is well-taken and shall be granted.

### BACKGROUND

       On May 15, 2012, Plaintiff filed a complaint in the County of Valencia, State of New Mexico, alleging violations of federal civil rights.  Defendants removed the case to federal court on May 30, 2012.  Plaintiff asserts claims of Excessive Force under the Eighth Amendment (Count I); Due Process alleged against Defendant Carrejo (Count II); Equal Protection (Count III); and Due Process alleged against Defendant Romero who was the warden at Central New Mexico Correctional Facility (Count IV).  Since Defendant Romero has been dismissed from this case (Doc. 38), Count IV has become moot.

At all relevant times, Plaintiff Kenneth Morgan is a former inmate who was completing his sentence at the Central New Mexico Correctional Facility ("CNMCF"), and is a homosexual male.  He alleges that he suffered verbal intimidations by Defendant Carrejo, a Captain at CNMCF, who openly berated Plaintiff based on his sexuality.  The intimidation increased and in January of 2011, Carrejo ordered Plaintiff to his office.  The complaint alleges that on that occasion, Carrejo forced Plaintiff to engage in sexual acts including anal penetration and oral sex, and threatened Plaintiff with various harms if he did not comply with the sexual acts, including throwing Plaintiff off the balcony and blaming it on an inmate, loss of good time privileges, and solitary confinement.

Another sexual assault is alleged to have occurred in March of 2011.  On that occasion, Plaintiff attempted to preserve evidence of the assault after Carrejo forced Plaintiff to perform oral sex.  Plaintiff spit Defendant's semen into some tissues and hid the DNA evidence in his cell.  He feared he would be killed by Defendant or his agents.  Other sexual assaults are alleged to have occurred during the first months of 2011.  The complaint goes on to describe these incidents, including occasions when Carrejo handcuffed Plaintiff to a pole in his office or to a couch, and raped him.  Plaintiff attempted to get the DNA evidence of his rapes out of the prison by requesting the help of the FBI, which planned to send an agent to the prison posing as a lawyer.  The complaint also describes Warden Romero's involvement in jeopardizing the safety of Plaintiff and the FBI agent by leaking the undercover operation to the state police, which Romero claimed was done pursuant to prison policy.  Romero's conduct was particularly suspect because the two state police officers who responded to Romero's call were brothers of Defendant Carrejo, the alleged rapist.  The state police officers were aware of the nature of Plaintiff's allegations before they questioned him, and attempted to extract information about the evidence

Plaintiff had.  The officers told Plaintiff that if he gave them the evidence, they would arrest their brother if he was the rapist.  Plaintiff asserts that he was terrified he would be killed and feared that his parole date would be lost and he would remain in prison in solitary confinement.

The alleged sexual assaults of Plaintiff stopped only when Defendant Carrejo retired from the prison.  Defendant Carrejo neither admits nor denies any of the allegations set forth in the complaint, and exercises his Fifth Amendment right against self-incrimination.  Doc. 15 (Jt. Status Rep't) at 6.

## DISCUSSION

In the instant motion, the New Mexico Risk Management Division ("RMD") moves the Court to allow RMD to intervene in this action under Fed.R.Civ.P. 24.

New Mexico law, NMSA 1978, § 15-7-2(B), imposes an affirmative obligation on RMD to procure insurance or, alternatively, to provide coverage for any risk not insured. Section 15-7-3(A)(4) also gives the RMD the authority to compromise, adjust, settle and pay claims. RMD's authority to expend funds is limited by N.M.Stat. §§ 41-4-20 and 41-4-23(B) (1978). RMD notes that CNMCF is a governmental entity, and as such is subject to sovereign immunity and duties and obligations set forth in the New Mexico Tort Claims Act, §41-4-3 et seq. ("Tort Claims Act").  Such duties include the duty to pay any judgment and/or settlement of claims based on the commission of any tort or violation federal or state constitutions by a "public employee" while acting "within the scope of his duty."  NMSA §41-4-4(D).   The Tort Claims Act defines scope of duty to mean "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance . . . ." § 41-4-3(G) (emphasis added).

I.      **Legal Standards**

RMD seeks intervention under either Rule 24(a) (intervention as of right) or Rule 24(b)(permissive).  Under Rule 24(a), upon timely application, the Court "must" permit an applicant to intervene when the applicant claims an interest in the action, and the applicant is so situated that disposition of the action may impair or impede the applicant's ability to protect that interest, and existing parties do not adequately represent the applicant's interest.  While Rule 24(a) does not specify the nature of the interest required for intervention as a matter of right, the Supreme Court has held that "what is obviously meant . . . is a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971).  The Tenth Circuit requires that the interest be "direct, substantial, and legally protectable." *Utah Assoc., of Counties v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001) (quoting *Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996)).

Rule 24(b) permits the court to allow an applicant to intervene where the applicant has a claim or defense sharing common questions of law or fact with the main action.   Based on their financial obligation to defend and indemnify under the Tort Claims Act, RMD wants to be able to argue the position that it does not have an obligation to pay any settlement in this case because Defendant Carrejo's actions were outside the course and scope of his employment and outside the scope of his duties within the definition and meaning of the Tort Claims Act.

**II.     Analysis**

The timeliness of RMD's motion is not at issue, as the case is still in the early stages of discovery and no depositions having been taken.  The relevant questions are whether RMD has an interest relating to property which is the subject of this action; whether the disposition of the action may impair or impede RMD's ability to protect that interest; and whether RMD's interest is adequately represented by the existing parties.

A.      RMD's Interest

As a general matter, the Court would agree that the issue of who pays for an award of damages is not sufficiently related to the interests in a lawsuit such that intervention should be allowed. However, the central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *San Juan County, Utah v. U.S.*, 503 F.3d 1163, 1193 (10th Cir. 2007). In this case, certain circumstances exist which persuade the Court that RMD has the right to intervene.

Plaintiff has alleged only federal claims under §1983, which require that the claimed deprivation was committed by a person acting "under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *Haines v. Fisher,* 82 F.3d 1503, 1508 (10th Cir. 1996). Actions performed "under color of state law' for purposes of § 1983 liability, and actions performed as a public employee under the Tort Claims Act are "distinct concepts." *Giron v. Corrections Corp. of America,* 14 F.Supp.2d 1245, 1251-52 (D.N.M. 1998); *see also Spurlock v. Townes et al.,* No. 09-CV-786, WJ/SMV, Doc. 130 at 18-20. However, whether a defendant has acted "within the scope of duty" must be addressed even for conduct that violates federal constitutional rights in order to determine whether RMD is obligated to cover potential liability for those claims. *See* §41-4-4(D)(2).

Both existing parties (Plaintiff and Defendant Carrejo) acknowledge that "scope of duty" is a jury question, *see RMD v. McBrayer,* 129 N.M. 778 (Ct.App. 2000), but contend that the issue of whether Carrejo was acting within the scope of duty need not be answered on the merits in this litigation because it is a separate and distinct issue from the outcome of the case against Carrejo. However, Plaintiff has alleged that Defendant Carrejo was "acting within the scope of [his] employment at all material times" (Compl., ¶ 5). Thus, while "scope of duty" is not an

5

element of any of the alleged federal claims, the resolution of that question will need to be resolved as part of this litigation.

Plaintiff and Defendant also argue that RMD is free to pursue and a separate declaratory action in state court to decide whether RMD is required to cover any damages should plaintiff prevail.  They further note that waiting to litigate this issue would not prejudice RMD because New Mexico law allows the State to recoup expenses if there is ultimately a determination that Carrejos, while acting within the scope of his duty, acted fraudulently or with actual malice. NMSA 1978 §41-4-4(E).   However, leaving RMD to file a separate declaratory action would not serve the concept of judicial economy, nor the purpose behind Rule 24(a), which is to avoid "a multiplicity of suits where common questions of law or fact are involved." *Coaltion of Arizona,* 100 F.3d at 844; *see also MacNeilage v. Young,* No. 07-CV-841, RHS-WDS, Order (Doc. 54) (noting that "permitting intervention would promote both judicial economy and prevent inconsistent findings and judgments").  Further, proceeding without RMD in this litigation may well leave it exposed to the preclusive effect of a judgment which potentially forces RMD to pay any future judgment entered against Carrejo.

For these reasons, I find that RMD has claimed an interest under Rule 24 sufficient to warrant intervention.[1]

B.     No Adequate Representation of RMD's Interest

It is clear that neither existing party intends to take up RMD's position on the "scope of duty issue."  In fact, both parties have an interest in arguing just the opposite—that the alleged

---

[1] Other cases have recognized RMD's interest in financial exposure. *See, e.g., Soto v. Galvan,* No. 06-CV-738 (Mem.Opin. & Order, Doc. 38, granting intervention where parties not prejudiced by grant and no factor affected fairness); *Healey v. Scovone*, unpubl. opin., 1999 WL 535298, *2, n.2 (10th Cir. 1999) (plaintiff alleged only §1983 claims, but RMD intervened based on obligation to pay damages); *cmp. Bd. of County Commissioners of San Miguel Cty v. Risk Management Div.*, 120 NM 178, 182 (NM 1995) (noting that RMD's statutory obligation to provide coverage for costs of defending governmental entities does not extend to mandamus actions).

sexual assaults were carried out within the scope of Defendant Carrejo's duty.  Defendant looks to RMD to provide a defense and to pay any future settlement or judgment, and Plaintiff has an interest in having a future judgment paid out of state coffers rather than risk having to contend with Defendant's discharge in bankruptcy.  *Cmp. Healey v. Scovone,* 1999 WL 535298 (plaintiff was left to sue RMD after defendant filed bankruptcy).

Defendant Carrejo has asserted his Fifth Amendment right not to testify, declining to admit or deny any of the allegations.  *See* Answer, Doc. 13.  He is being charged with parallel criminal proceedings and contends that the civil litigation will be further compounded if he has to defend against a collateral coverage attack.  The Court finds no prejudice to Defendant in allowing RMD to intervene; Defendant will undoubtedly go on asserting his Fifth Amendment rights, whether or not RMD intervenes.  On the other hand, RMD will be prejudicially impacted by having this lawsuit run its course without having an opportunity to litigate the scope of duty question.

Carrejo argues that there is no need for intervention because neither he nor Plaintiff intend to interject "badge of authority" and "scope of duty" issues into the litigation.  Doc. 43 at 2.  As mentioned above, regardless of whether parties intend to litigate the issue, it will have to be determined at some point, and the Court would prefer to have some briefing on the matter, rather than decide it in a vacuum.

## CONCLUSION

In sum, the Court finds and concludes that RMD's obligation to pay damages in this lawsuit is directly related to whether Defendant Carrejo was acting in the scope of duty, and thus, RMD clearly has an interest in seeking an answer to the question of whether it has a duty to defend and indemnify Defendant Carrejo, should the jury find that the alleged acts occurred.

The Court also finds and concludes that because neither party intends to represent RMD's interest, RMD's interest would not be adequately represented, and RMD would be prejudiced by denying its application to intervene and leaving to RMD the option of filing a subsequent declaratory action. The Court notes that intervention is not necessarily appropriate in all instances. In these circumstances, however, where Defendant is asserting his Fifth Amendment right, where none of the existing parties will be adequately representing RMD's position, and where RMD may be prejudiced by a judgment that results in precluding it from presenting its position at a later time, intervention is appropriate.

**THEREFORE,**

**IT IS ORDERED** that RMD's Motion to Intervene **(Doc. 41)** is hereby GRANTED and that RMD shall file the Complaint-in-Intervention (Ex. A to motion) **on or before Monday, June 10, 2013**;

**IT IS FURTHER ORDERED** that the Stay of Discovery (Doc. 49) is hereby LIFTED, and this matter referred to the Magistrate Judge for further scheduling.

_____
UNITED STATES DISTRICT JUDGE